# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

JASON D. TAUFNER,

    **Plaintiff,**

v.                                                   Case No. 19-CV-1288

JANE DOE 1 and JOHN DOE,

    **Defendants.**

## DECISION AND ORDER SCREENING PLAINTIFF'S COMPLAINT

Plaintiff Jason D. Taufner is a Wisconsin state inmate and is representing himself. He filed a complaint under 42 U.S.C. § 1983 alleging that his rights were violated while he was confined at the Milwaukee County Jail. Taufner also filed a motion to proceed without prepaying the filing fee. This decision resolves Taufner's motion to proceed without prepaying the filing fee and screens his complaint.

    *1. Motion to Proceed without Prepaying the Filing Fee*

The Prison Litigation Reform Act gives courts discretion to allow prisoners to proceed with their lawsuits without prepaying the $350 filing fee, as long as they comply with certain requirements. 28 U.S.C. § 1915. One of those requirements is that the prisoner pay an initial partial filing fee when he has sufficient funds to do so. 28 U.S.C. § 1915(a)(2).

On October 18, 2019, I ordered Taufner to pay an initial partial filing fee of $2.42. (Docket # 9.) He paid that fee on November 4, 2019. Accordingly, I will grant Taufner's motion. He must pay the remainder of the filing fee over time in the manner explained at the end of this order.

2. *Screening of the Complaint*

    2.1    Federal Screening Standard

Federal law requires that I screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). I must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

To proceed under 42 U.S.C. § 1983, a plaintiff must allege that: (1) he was deprived of a right secured by the Constitution or laws of the United States; and (2) the defendant was acting under color of state law. *Buchanan-Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009) (citing *Kramer v. Village of North Fond du Lac*, 384 F.3d 856, 861 (7th Cir. 2004)); *see also Gomez v. Toledo*, 446 U.S. 635, 640 (1980). I will give a *pro se* plaintiff's allegations, "however inartfully pleaded," a liberal construction. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

    2.2    Allegations in the Complaint

According to Taufner's complaint, on December 2, 2018, he was involved in a domestic dispute with his then-girlfriend. During the dispute she crashed her car into him

2

and seriously injured him. The Milwaukee Police were called. They arrested Taufner before asking about the extent of his injuries. He sustained a head injury and could not walk due to an injured left knee. The police took him to the Milwaukee County Jail. A registered nurse evaluated him and noted a laceration on his head and a serious left knee injury. She provided Taufner with an ice pack, a lower bunk restriction, pain medication (200 milligrams of ibuprofen twice a day), and assured him that a provider would see him in a couple of days.

As Taufner waited to see a provider, he continued to take his pain medications. However, his knee injury became worse—he experienced swelling, discoloration, and severe pain. He "continuously grieved" to the nurses by showing them his worsening knee and pleaded to be seen by a provider whenever they brought him his medication. The nurses told them they did not have information about his injury on hand but would check his records when they returned to the office. Taufner never heard back from the nurses.

Taufner's pain medication proved to be ineffective and he was often in tears from both the pain and feeling disregarded. On December 10, 2018, Taufner was unable to sleep due to his pain. A passing deputy heard Taufner crying and stopped to ask what was going on. Taufner told the deputy he needed to see a doctor and showed him his knee. The deputy told Taufner he was going to get a nurse. A bit later, the deputy returned to Taufner's cell with a nurse, sued as Jane Doe #1. Nurse Jane Doe #1 examined Taufner in the dayroom of his housing unit. Taufner expressed concern about developing a blood clot and asked to go to the emergency room, but Jane Doe #1 shot down his concerns. She told Taufner to "toughen up" and that he would not "drop dead" from a knee injury. Jane Doe #1 told

3

Taufner he had an infection in his knee and though she offered him more ibuprofen (which he told her was not effective), she did not give him anything for the infection.

Taufner continued his daily routine of verbally complaining to the nurses about his medical needs and asking to be seen by a provider. This went on for another three weeks. On December 31, 2018, a provider saw Taufner. The provider performed an ultrasound on Taufner's knee and told him that he would have the results the next day. However, a few hours later, a nurse practitioner had Taufner called out of his cell. The nurse practitioner told Taufner that he had a blood clot in his leg and would need to start multiple medications immediately to treat it effectively and minimize the risk of the clot traveling to his heart or brain. The nurse practitioner told Taufner he would need to be monitored by having his blood drawn once per week. However, the nurse practitioner did not provide any medication to address Taufner's knee pain. He also did not receive medication for the infection he had previously been told he had.

One of Taufner's medications had to be administered twice daily by injection into the stomach. This resulted in bruising, discoloration, and hardened lumps across his stomach. The weekly blood draws also caused excessive bruising. Eventually, a nurse practitioner decided to stop the twice daily injections due to the adverse effects and doubled his oral medication. His weekly testing ended abruptly about two months after he stopped receiving stomach injections.

On January 9, 2019, Taufner filed a complaint against nurse Jane Doe #1 based on her alleged deliberately indifferent actions towards his medical needs on December 31, 2018. Taufner did not receive a notification that a complaint examiner received his complaint, however. So he sent multiple requests to the records department trying to find

4

Case 2:19-cv-01288-NJ   Filed 06/22/20   Page 4 of 10   Document 11

out what happened. On January 28, 2019, he received a receipt that detailed his account of the events that gave rise to his grievance. The information about the handling of the complaint was very vague but did state that the complaint was forwarded to medical and open records. The complaint examiner, who Taufner sues as "John Doe," identified himself as KNKXN. Taufner says that John Doe never communicated with him and alleges that there was no serious consideration of his grievance. He filed multiple requests for more information about how his grievance was handled but never heard back.

Taufner then filed a complaint against John Doe on February 8, 2019. He was never contacted. When he asked the records department for a copy, he was told that no such complaint was ever "handled for the record." This, he alleges, demonstrates John Doe interfered with the process. He also alleges that John Doe should have done something to get him medical help upon his receipt of his complaint against Jane Doe #1.

2.3 Analysis

As a preliminary matter, I note that until recently, a plaintiff's status as either a pretrial detainee or a convicted prisoner did not matter when analyzing claims based on medical care. They were all analyzed under the Eighth Amendment's deliberate indifference standard. But, after the Supreme Court's decision in *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), the Court of Appeals for the Seventh Circuit held "that medical-care claims brought by pretrial detainees under the Fourteenth Amendment are subject only to the objective unreasonableness inquiry identified in *Kingsley*." *Miranda v. County of Lake*, 900 F.3d 335, 352 (7th Cir. 2018).

Taufner's status while at the Milwaukee County Jail is not clear. Though it appears he was taken into custody at the time of the incident with his girlfriend, a review of

Wisconsin Circuit Court Access suggests that Taufner's extended supervision was revoked in April 2019 and he therefore may have been in custody on a supervision hold. However, it is not clear if this matters to the analysis because the Seventh Circuit has not explicitly stated whether someone on a supervision (or probation or parole) hold is a pretrial detainee or a prisoner. Though the court treated a plaintiff on a parole hold as a pretrial detainee in *Smith v. Sangamon Cty. Sheriff's Dept.*, 715 F.3d 188, 191 (7th Cir. 2013), the decision did not discuss or analyze the issue. And, as far as I can tell, the Seventh Circuit has not spoken on the issue since it extended *Kingsley* to medical care claims. Other district courts have applied the pretrial detainee standard. *See, e.g.*, *Doolin v. Toben*, No. 3:19CV1008-PPS/MGG, 2020 WL 1472138 (N.D. Ind. Mar. 26, 2020); *Leach v. Shaffer*, No. 16-cv-634-JPG-RJD, 2019 WL 5874220 (S.D. Ill. July 15, 2019). However, because Taufner can state a claim against both the defendants (as explained below) under the more stringent Eighth Amendment standard, I will use that standard for purposes of screening his complaint.

Prison officials violate the Eighth Amendment's proscription against cruel and unusual punishment when their conduct demonstrates "deliberate indifference to serious medical needs of prisoners." *Gutierrez v. Peters*, 111 F.3d 1364, 1369 (7th Cir. 1997) (internal citation and quotation omitted). This standard contains both an objective element (that the medical needs be sufficiently serious) and a subjective element (that the officials act with a sufficiently culpable state of mind). *Id*.

I am satisfied that Taufner has sufficiently alleged an objectively serious medical need with respect to his injured knee. I am also satisfied that his allegations that Jane Doe #1's disregarded his concerns about getting a blood clot, that she failed to provide medication to treat the infection she said he had, and that she did not provide him with

6

adequate pain management sufficiently allege that she acted with deliberate indifference with respect to his medical needs. He may proceed against Jane Doe #1 based on the lack of medical care he alleges he received.

With respect to John Doe, Taufner alleges that his grievance against Jane Doe #1 evidenced that he was receiving no care for his knee and that, therefore, John Doe should have acted to ensure he got the medical care he needed. Taufner was seen by a provider on December 31, 2018. He received the blood clot diagnosis and a treatment plan the same day. However, he says he did not receive any treatment for the infection Jane Doe #1 said he had, and he did not receive medication that was adequate to address his pain. So, when he filed his grievance on January 9, 2019, his issues with treatment for his infection and his pain were still ongoing. And because they were ongoing, Taufner has sufficiently alleged that John Doe knew of his ongoing medical issues and did not take any action to address them. He therefore may also proceed against John Doe.

However, Taufner cannot proceed on claim against John Doe based on his allegations concerning the grievance system. There is no inherent constitutional right to a prison grievance system. *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996). That is, grievance procedures are "not mandated by the First Amendment and do not by their very existence create interests protected by the Due Process Clause." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). John Doe's alleged mishandling of Taufner's grievances does not state a claim.

Because Taufner does not know the names of the defendants he is suing, I will add Sheriff Earnell Lucas as a defendant for the limited purpose of helping Taufner identify the names of the defendants. *See Donald v. Cook County Sheriff's Dept.*, 95 F.3d 548, 556 (7th Cir.

7

1996). Lucas does not have to respond to the complaint. After Sheriff Lucas' attorney files an appearance in this case, Taufner may serve discovery upon Sheriff Lucas (by mailing it to his attorney at the address in his notice of appearance) to get information that will help him identify the names of the defendants.

For example, Taufner may serve interrogatories (written questions) under Fed. R. Civ. P. 33 or document requests under Fed. R. Civ. P. 34. Because Taufner does not state a claim against Sheriff Lucas, Taufner's discovery requests must be limited to information or documents that will help him learn the real names of the defendants he is suing: Jane Doe #1 and John Doe. Taufner may not ask Sheriff Lucas about any other topic, and Sheriff Lucas is under no obligation to respond to requests about any other topic.

After Taufner learns the names of the people he alleges violated his constitutional rights, he must file a motion to substitute their names for the Jane Doe #1 and John Doe placeholders. I will dismiss Sheriff Lucas as a defendant once Taufner identifies the defendants' names. After the defendants have an opportunity to respond to Taufner's complaint, I will set a deadline for discovery. At that point, Taufner may use discovery to get the information he believes he needs to prove his claims.

Taufner must identify the names of the John Doe defendants within sixty days of Sheriff Lucas' attorney appearing. If he does not or does not explain why he is unable to do so, I may dismiss his case based on his failure to diligently pursue it. Civil L. R. 41(c).

**NOW, THEREFORE, IT IS ORDERED** that Taufner's motion to proceed without prepayment of the filing fee (Docket # 3) is **GRANTED**.

**IT IS FURTHER ORDERED** that the agency having custody of Taufner shall collect from his institution trust account the **$342.58** balance of the filing fee by collecting

8

monthly payments from his prison trust account in an amount equal to 20 percent of the preceding month's income credited to his trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action. If Taufner is transferred to another institution, county, state, or federal, the transferring institution shall forward a copy of this order along with Taufner's remaining balance to the receiving institution.

**IT IS FURTHER ORDERED** that Milwaukee County Sheriff Earnell Lucas shall be named as a defendant for the limited purpose of helping Taufner identify the Doe defendants' names. The clerk's office will update the docket accordingly.

**IT IS FURTHER ORDERED** that, pursuant to the informal service agreement between Milwaukee County and this court, copies of the complaint and this order shall be electronically sent today to Milwaukee County for service on Sheriff Lucas.

**IT IS FURTHER ORDERED** that Sheriff Lucas does not have to respond to the complaint; however, he shall respond to discovery requests that Taufner serves in an effort to identify the defendants' name. Sheriff Lucas does not have to respond to discovery requests about any other topic.

**IT IS FURTHER ORDERED** that Taufner must identify the defendants' names within sixty days of Sheriff Lucas' attorney filing an appearance in this case. If Taufner does not identify the defendants' names by the deadline or advise the court why he is unable to do so, the court may dismiss this case based on his failure to diligently prosecute it.

9

Case 2:19-cv-01288-NJ   Filed 06/22/20   Page 9 of 10   Document 11

**IT IS FURTHER ORDERED** that plaintiffs who are inmates at Prisoner E-Filing Program institutions[1] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the court to the following address:

>Office of the Clerk
>United States District Court
>Eastern District of Wisconsin
>362 United States Courthouse
>517 E. Wisconsin Avenue
>Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the matter.

Taufner is further advised that failure to make a timely submission may result in the dismissal of this case for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated in Milwaukee, Wisconsin, this 22nd day of June, 2020.

BY THE COURT:

*s/Nancy Joseph*
NANCY JOSEPH
United States Magistrate Judge

---

[1] The Prisoner E-Filing Program is mandatory for all inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.