JASON D. TAUFNER,
      Plaintiff,

  v.                                               Case No. 19-C-1288

KIMBERLY JOHNSON and
LYNDA KARASZEWSKI,
      Defendants.

## ORDER

Plaintiff Jason D. Taufner, a Wisconsin state prisoner representing himself, filed this lawsuit under 42 U.S.C. § 1983. The court screened the plaintiff's complaint and permitted him to proceed on claims against John and Jane Does at the Milwaukee County Jail (Jail). The plaintiff later identified the Does as defendants Kimberly Johnson and Lynda Karaszewski. The defendants each move for summary judgment on the ground that the plaintiff failed to exhaust his administrative remedies for the claims on which the court allowed him to proceed. ECF Nos. 46 & 51. The plaintiff filed his opposition to defendant Karaszewski's motion but has not filed his opposition to defendant Johnson's motion. I will **GRANT** the defendants' motions and **DISMISS** this case without prejudice.

### I. BACKGROUND[1]

The plaintiff was an inmate at the Jail from December 2018 through October 2019. ECF No. 48, ¶ 2. He alleged in his complaint that on December 2, 2018, his girlfriend

---

[1] Facts in this section are taken from the defendants' proposed findings of fact and declaration in support, ECF Nos. 48–49, 52 & 54–55, the plaintiff's responses to those proposed facts and his declaration, ECF Nos. 57–59, and defendant Karaszewski's reply facts, ECF No. 62. For purposes of this decision, I will consider admitted any properly supported facts that the plaintiff does not contest. *See* Civil L. R. 56(b)(4). I will consider

crashed her car into him following a domestic dispute, injuring his left knee. *Id.*, ¶ 5; ECF No. 1, ¶ 4. Milwaukee police arrested the plaintiff and took him to the Jail. ECF No. 48, ¶ 6; ECF No. 1, ¶ 5–6.

## A. The Jail's Grievance Procedures

Both parties filed copies of the relevant portion of the Jail's Inmate Policy Handbook outlining the grievance and appeal process. ECF No. 49-2; ECF No. 59-1 at 10. The Handbook states that inmates "may file a grievance" if they believe they "are being treated unjustly or unfairly." ECF No. 49-2 at 3. The grievance must address either "an issue personally affecting an inmate in the area of health, welfare, facility operation or inmate services" or "a complaint of oppression or misconduct by an employee." *Id.* The Handbook instructs inmates to "file a grievance only after you have addressed the problem with the pod officer and are not satisfied with the result." *Id.* (emphasis omitted).

To submit a grievance, inmates must complete a written grievance form and place the competed form in the grievance box or give it to an officer if the box is unavailable. *Id.* A Jail representative reviews and answers the grievance. *Id.* The Handbook provides the following procedure for appealing a grievance:

> 4. If you are dissatisfied with the result you may appeal the decision by writing supporting documentation including full names of witnesses. The Captain will review and rule on your appeal.
>
> 5. Once the Captain has ruled, and more evidence is available you may make one final appeal to the Jail Commander or his/her designee. This appeal must include all previous writings and supporting testimony and evidence and the new found information/evidence. This decision/action is final.

---

the proposed facts only if they are supported by evidence in the record, *see* Fed. R. Civ. P. 56(c)(1), and will consider arguments in the supporting memoranda only if they properly refer to supported facts, *see* Civil L. R. 56(b)(6).

*Id.* The plaintiff does not dispute that he "must strictly follow the Milwaukee County Jail administrative procedure set forth in the Inmate Policy Handbook in order to exhaust his administrative remedies." ECF No. 48, ¶ 15; ECF No. 57, ¶ 15.

**B.    The Plaintiff's Grievance**

Defendant Karaszewski was working as a nurse at the Jail in December 2018. ECF No. 48, ¶¶ 3, 8. The plaintiff alleges Karaszewski did not provide him adequate medical treatment. *Id.*, ¶ 4; ECF No. 1. The plaintiff filed one grievance about this issue, which Jail staff received on January 9, 2019. ECF No. 48, ¶ 10; ECF No. 49-1 at 1. In the grievance, the plaintiff requests copies of his "medical [e]mergency that I had on 3rd shift at the beging [sic] of Dec. where I had a bad infection in my leg & knee." ECF No. 49-1 at 1. He alleges that "the 3rd shift Nurse Supervisor" told him to "toughen up" when he asked to be taken to the emergency room. *Id.* He alleges the nurse told him his injury would not cause a blood clot and gave him ibuprofen. *Id.* He alleges that on December 31 (presumably of 2018), he had an ultrasound on his leg and knee that revealed a blood clot for which he received injections in his stomach. *Id.* He alleges "this would not of [sic] happened if I would of [sic] been taken to the ER right away." *Id.*

On January 25, 2019, Jail staff reviewed the plaintiff's grievance and forwarded it "to medical and open records." ECF No. 48, ¶ 11; ECF No. 49-1 at 2. On January 31, 2019, the medical unit responded to the grievance, concluding it was "Unfounded." ECF No. 48, ¶ 12; ECF No. 49-1 at 3. The response apologizes "for the inconvenience" and notes that a nurse assessed the plaintiff and followed up with medical providers. ECF No. 49-1 at 3. The response advises the plaintiff to follow his medical providers' plan of care and instructs him to "submit a sick call slip" for any further medical concerns. *Id.* On

February 2, 2019, the Nursing Supervisor further responded to the plaintiff's grievance. ECF No. 48, ¶ 13; ECF No. 49-1 at 4. That response reiterates the conclusion and instructions from the medical unit's response. ECF No. 48, ¶ 13; ECF No. 49-1 at 4.

Defendant Karaszewski asserts the plaintiff "was aware of and utilized the Milwaukee County Jail grievance system," pointing to his grievance as evidence. ECF No. 48, ¶ 16; ECF No. 48-1 at 1. The plaintiff disputes this statement but only generally cites his declaration. ECF No. 57, ¶ 16 ("Disputed, see (Decl. Taufuer)."). His declaration states that he filed a grievance, "followed the direction on the grievance response," and "did what I was told to do on the grievance responses." ECF No. 59, ¶¶ 16, 19 & 24.

**C. Appeals**

Defendant Karaszewski states the plaintiff did not appeal the responses from medical or open records (the Nursing Supervisor). ECF No. 48, ¶¶ 17, 19. The defendant states that the Jail's policy "specifically required inmates to appeal responses they are dissatisfied with first to the Captain and then to the Jail Commander or his/her designee." *Id.*, ¶ 18 (citing ECF No. 49-2 (the Jail Inmate Handbook)). The defendant states the plaintiff was aware of the Jail's procedure but "choose [sic] not to file any appeals and therefore, did not exhaust his administrative remedies." *Id.*, ¶¶ 21–22.[2]

Plaintiff states that he submitted three sick call slips "in accordance with medical and open records grievance response." ECF No. 57, ¶ 17 (citing ECF No. 59-1 at 7–9). He states that the submitted three sick call slips "in accordance with medical and open records grievance response." ECF No. 57, ¶ 17 (citing ECF No. 59-1 at 7–9). He states

---

[2] Karaszewski's remaining proposed facts restate the same assertions. ECF No. 48, ¶¶ 23–32.

that the responses he received from the medical unit and nursing supervisor "leads one to believe he or she has or can exhaust by submitting a sick call slip." *Id.*, ¶ 23. He asserts that by telling him to submit a sick call slip, the Jail failed to "'clearly' identify the proper remedies and there was no 'clear route'" for him to challenge the response. *Id.*, ¶ 26 (citing *Westefer v. Snyder*, 422 F. 3d 570, 580 (7th Cir. 2005)). He says the burden was on the Jail "to make grievance procedures clear and easy to follow." *Id.* Finally, he states that the Inmate Handbook "clearly states that an inmate 'MAY' appeal, (not) 'Required,' (as the defendant claims)," leaving him to believe an appeal was optional. *Id.*, at 4, ¶ 18 & at 8, ¶ 2.

## II. ANALYSIS

### A.     Summary Judgment Standard

A party is entitled to summary judgment if it shows that there is no genuine dispute as to any material fact and it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Material facts" are those that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). To survive a motion for summary judgment, a non-moving party must show that sufficient evidence exists to allow a jury to return a verdict in its favor. *Brummett v. Sinclair Broad. Grp., Inc.*, 414 F.3d 686, 692 (7th Cir. 2005).

**B.	Exhaustion**

Under the Prison Litigation Reform Act (PLRA), an inmate cannot assert a cause of action under federal law "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see Woodford v. Ngo*, 548 U.S. 81, 93 (2006). Exhaustion requires that an inmate comply with the rules applicable to the grievance process at the inmate's institution. *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). This requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

The Court of Appeals for the Seventh Circuit applies a "strict compliance approach to exhaustion," *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006), and expects inmates to adhere to "the specific procedures and deadlines established by" his institution's policy, *King v. McCarty*, 781 F.3d 889, 893 (7th Cir. 2015) (citing *Woodford*, 548 U.S. at 93). That means if the plaintiff failed to complete any step in the Jail's exhaustion process before bringing his lawsuit, the court must dismiss the plaintiff's claims. *See Perez v. Wis. Dep't of Corrs.*, 182 F.3d 532, 535 (7th Cir. 1999). "Substantial compliance with administrative remedies" does not satisfy exhaustion requirements. *Farina v. Anglin*, 418 F. App'x 539, 543 (7th Cir. 2011) (citing *Booth v. Churner*, 532 U.S. 731, 739 (2001), and *Dole*, 438 F.3d at 809). Because exhaustion is an affirmative defense, the defendants bear the burden of proving that the plaintiff failed to exhaust. *See Pavey v. Conley*, 544 F.3d 739, 740–41 (7th Cir. 2008) (citing *Jones v. Bock*, 549 U.S. 199, 216 (2007)).

C.  Discussion[3]

It is undisputed that the plaintiff filed a grievance about Karaszewski's medical treatment. Despite the plaintiff's assertion that he did not receive a response to his grievance, the evidence clearly refutes that: Both the medical unit and the Nursing Supervisor responded to his grievance, concluding that it was unfounded. It is therefore undisputed that the plaintiff received a response (two, actually) to his grievance. It is undisputed that the responses instructed the plaintiff to submit a sick call slip if he had "further medical concerns." ECF No. 49-1 at 3 & 4. It is undisputed that the plaintiff did not file an appeal to the Jail Captain or Commander, as the Jail's Inmate Policy Handbook provides. The plaintiff instead filed three sick call requests seeking further medical treatment. It is undisputed that the Inmate Policy Handbook provides the administrative procedures the plaintiff must strictly follow to exhaust his administrative remedies.

The plaintiff presents three arguments contesting that he failed to exhaust. The first—that he received no response to his grievance—is clearly refuted by the evidence and the plaintiff's own declaration, as noted above. *See* ECF No. 49-1 at 3 & 4; ECF No. 59, ¶ 18 ("Finally, on January 31, 2019, I received a response for my grievance.").

The plaintiff next asserts that the responses he received led him to believe a sick call slip constituted an appeal from the denial of his grievance. He says the appeal process was confusing and unclear, so he should be excused from not properly appealing the denial of his grievance.

---

[3] The parties dispute the legal significance of the plaintiff's actions but do not dispute the material facts. Therefore, there are no unresolved questions of fact necessitating a hearing as described in *Pavey*, 544 F.3d at 742. *See Aguirre v. Witek*, No. 08-C-1110, 2010 WL 1292161, at *2 (E.D. Wis. Mar. 30, 2010) (citing *Doss v. Gilkey,* 649 F.Supp.2d 905, 912 (S.D. Ill. 2009)).

Inmates are required to exhaust only "available" administrative remedies. 42 U.S.C. § 1997e(a). An administrative review system may be deemed unavailable when it is "so opaque that it becomes, practically speaking, incapable of use." *Ross v. Blake*, 578 U.S. 1174, 136 S. Ct. 1850, 1859 (2016). In other words, when the administrative remedy provided is "essentially 'unknowable'—so that no ordinary prisoner can make sense of what it demands—then it is also unavailable." *Id.*

The Inmate Policy Handbook is not "opaque," confusing, or "unknowable." It provides an unambiguous five-step grievance procedure, including instructions on appeals. ECF No. 49-2 at 3. The Handbook states that if an inmate is dissatisfied with the result of a grievance, he "may appeal the decision by writing supporting documentation including full names of witnesses." *Id.* The Jail Captain reviews and rules on appeals. *Id.* Once the Captain rules, and if more evidence is available, inmates "may make one final appeal to the Jail Commander or his/her designee." *Id.* This appeal is final and must include the grievances, responses, supporting testimony, and any new evidence or information. *Id.*

The plaintiff suggests it is not the Jail's grievance procedure that is unclear or confusing. He instead asserts that the responses he received from the medical unit and Nursing Supervisor were confusing, so he followed their directions to submit sick call slips. But those responses were also not ambiguous. The responses addressed his grievance, concluded it was unfounded, and directed him to submit a sick call slip *if he had additional medical concerns*. ECF No. 49-1 at 3 ("If you have further medical concerns, please submit a sick call slip."); *id.* at 4 ("[I]f you have any further medical concerns, please submit a sick call slip."). Contrary to the plaintiff's assertion, *see* ECF

8
Case 2:19-cv-01288-LA   Filed 03/25/22   Page 8 of 12   Document 68

No. 58, ¶ 12, neither response advised him to submit a sick call slip to appeal his grievance, continue the administrative process, or exhaust his administrative remedies.

Even if the plaintiff was confused by the Inmate Policy Handbook's grievance procedures, the responses to his grievances, or the combination of the two, that still does not excuse him from complying with the Jail's appeal process detailed in the Handbook. The PLRA requires *strict* exhaustion, "even where 'a prisoner makes a reasonable mistake about the meaning of a prison's grievance procedures.'" *Fifer v. Holloway*, No. 15-CV-1121-JPS, 2016 WL 5793706, at *4 (E.D. Wis. Sept. 30, 2016) (quoting *Ross*, 136 S. Ct. at 1858). The Handbook unequivocally states that the Jail Captain and Commander review appeals of denied grievances. It says nothing about the medical unit, the open records department, or the Nursing Supervisor. The plaintiff does not dispute that he was aware of the Handbook's description of the grievance procedure. Nor does he dispute that he had to strictly comply with that procedure to exhaust his administrative remedies. The ambiguity he insists the responses created did not render those remedies unavailable and does not excuse his failure to follow the procedure for appeals spelled out in the Handbook. *See Ross*, 136 S. Ct. at 1859 ("When an administrative process is susceptible of multiple reasonable interpretations . . . the inmate should err on the side of exhaustion."); *Reid v. Balota*, 962 F.3d 325, 329 (7th Cir. 2020) (quoting *Ross*, 136 S. Ct. at 1859) (noting that "[m]ere ambiguity" in an administrative process is not necessarily enough to render the process unavailable; it instead must be "'unknowable'" or "'incapable of use'"); *Gant v. Cushing*, No. 19-C-640, 2019 WL 4739477, at *2 (E.D. Wis. Sept. 19, 2019) (mistaken belief that statement from inmate complaint examiner meant prisoner did

9
Case 2:19-cv-01288-LA   Filed 03/25/22   Page 9 of 12   Document 68

not need to appeal denial of grievance, albeit reasonable, did not excuse him from exhausting administrative remedies).

The plaintiff's final argument is that the Inmate Handbook states an inmate *may* appeal the denial of his grievance, rather than stating that an inmate *must* appeal. He argues this means he exhausted his administrative remedies simply by filing the grievance and did not also need to appeal. The plaintiff is incorrect. The Inmate Handbook uses the permissive "may" language, but that means only that the *Jail* does not require an inmate to appeal the denial of his grievance. The PLRA does not give him that same choice. Section 1997e(a) requires an inmate to exhaust *all* administrative remedies "as are available." It does not excuse an inmate's belief, even if reasonable, "'about administrative remedies that *might* be available to him. The statute's requirements are clear: If administrative remedies are available, the prisoner *must* exhaust them.'" *Twitty v. McCoskey*, 226 F. App'x 594, 596 (7th Cir. 2007) (quoting *Chelette v. Harris*, 229 F.3d 684, 688 (8th Cir. 2000)) (emphasis added); *see Fencel v. Cross*, No. 20-2428, 2021 WL 3883611, at *2 (7th Cir. Aug. 31, 2021) (citing 42 U.S.C. § 1997e(a), and *Woodford*, 548 U.S. at 85) (prisoner failed to exhaust administrative remedies by resubmitting grievance that Illinois law states "an inmate 'may' file . . . through the normal procedures" because "there was a process available, which he had to use before suing in federal court").

An appeal to the Jail Captain and Jail Commander were available parts of the Jail's grievance process, and the plaintiff fails to show otherwise. The plaintiff was therefore required to complete those stages of the Jail's grievance process to exhaust his administrative remedies under § 1997e(a). Even if the plaintiff was unsure whether he needed to appeal, he was required to "err on the side of exhaustion." *See Ross*, 136 S.

10
Case 2:19-cv-01288-LA   Filed 03/25/22   Page 10 of 12   Document 68

Ct. at 1859; *Gant*, 2019 WL 4739477, at *2. Because he failed to do so and did not complete all available steps of the Jail's grievance procedure, he failed to exhaust his administrative remedies.[4]

Defendant Karaszewski has satisfied her burden to show the plaintiff failed to exhaust his administrative remedies for his claim against her. I will therefore dismiss this claim without prejudice. *See Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004) (explaining that "*all* dismissals under § 1997e(a) should be without prejudice").

### III. DEFENDANT JOHNSON

On July 20, 2021, defendant Johnson moved for summary judgment. ECF No. 51. The plaintiff was required to respond to her motion within thirty days—by August 19, 2021. *See* Civil Local Rule 56(b)(2). That deadline has passed, and the plaintiff has not responded to Johnson's brief or proposed statements of fact. As such, I will construe the motion as unopposed. I have reviewed Johnson's motion, brief and declarations in support, and the undisputed facts. *See* Fed. R. Civ. P. 56(e)(2). I conclude that the plaintiff failed to exhaust his administrative remedies against Johnson, and she is entitled to summary judgment. I will dismiss this claim without prejudice. *See Ford*, 362 F.3d at 401.

### IV. CONCLUSION

**THEREFORE, IT IS ORDERED** that the defendants' motions for summary judgment on exhaustion grounds (ECF Nos. 46 & 51) are **GRANTED**.

---

[4] The plaintiff's response materials spend several paragraphs detailing and arguing the merits of his claims. Because I conclude that the plaintiff failed to exhaust his administrative remedies, I will not reach the merits of his claims. *See Perez*, 182 F.3d at 536 (noting that where the defendants raise the issue of exhaustion, a district court "must not proceed to render a substantive decision until it has first considered § 1997e(a)").

**IT IS FURTHER ORDERED** that this case is **DISMISSED WITHOUT PREJUDICE**. The Clerk of Court will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Federal Rule of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated at Milwaukee, Wisconsin this 25th day of March, 2022.

> s/Lynn Adelman
> LYNN ADELMAN
> United States District Judge